FILED

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

2016 MAY 31 P 3: 56

CLERK US DISTRICT COURT
ALEXANDRIA VIRGINIA

Society for Human Resource Management,

Civil Action No. 1:16cv596

*Plaintiff,*

vs.

Northern California Human Resources Council,

*Defendant.*

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR PRELIMINARY INJUNCTION

Michael Warley (VA Bar: 88075)
Jerald A. Jacobs (*Pro hac forthcoming*)
Alvin Dunn (*Pro hac forthcoming*)
Sara E. Stinson (*Pro hac forthcoming*)
Pillsbury Winthrop Shaw Pittman, LLP
1200 Seventeenth Street NW
Washington, DC 20036-3006
Tel: (202) 663-8000
Fax: (202) 663-8007
michael.warley@pillsburylaw.com
jerry.jacobs@pillsburylaw.com
alvin.dunn@pillsburylaw.com
sara.stinson@pillsburylaw.com
*Attorneys for Society for Human Resource Management*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS ........................................................................................2

    The Importance of SHRM's Chapter Structure .............................................2
    The Northern California Human Resources Association.....................................4
    NCHRA's Expansion into Other SHRM Chapters' Territories............................5
    The Widespread Consequences of NCHRA's Actions.......................................7

ARGUMENT......................................................................................................9

  I.   This Court Should Issue A Preliminary Injunction to Prevent Irreparable Harm to
       SHRM. .................................................................................................9

      A.  SHRM is Likely to Succeed on the Merits of its Breach of Contract and
          Trademark Infringement Claims against NCHRA. .....................................10

          i.   SHRM is Likely to Succeed on its Breach of Contract Claim............................10
          ii.  SHRM is Likely to Succeed on its Trademark Infringement Claim....................12

      B.  SHRM Will Suffer Irreparable Harm Absent Injunctive Relief, and the Balance of
          Hardships is in SHRM's Favor..............................................................14

          i.   The Harm to SHRM is Serious and Impossible to Measure in Monetary
             Damages...................................................................................14
          ii.  The Balance of Hardships Tips Heavily in SHRM's Favor. ..................................16

      C.  An Injunction is in the Public Interest. ......................................................17

  II.  SHRM Should Not Be Required to Post a Bond. .........................................18

CONCLUSION...................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allegra Network LLC v. Reeder,*
No. 1:09-cv-912, 2009 WL 3734288 (E.D. Va. Nov. 9, 2009) .......................................... 14, 15

*Amoco Prod. Co. v. Village of Gambell, AK,*
480 U.S. 531 (1987) ................................................................................................................ 14

*Best Med. Int'l v. Tata Elxsi Ltd.,*
No. 1:10-CV-01273 (IDD), 2011 WL 5843627 (E.D. Va. Nov. 21, 2011) ............................. 10

*Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.,*
23 F. App'x 134 (4th Cir. 2001) ............................................................................................. 19

*Chesapeake Supply and Equip. v. J.I. Case Co.,*
700 F. Supp. 1415 (E.D.Va. 1988) ......................................................................................... 10

*Dynamic Aviation Group Inc. v Dynamic Int'l. Airways, LLC,*
No. 5:15-CV-00058, 2016 WL 1247220 (W.D. Va. Mar. 24, 2016) ..................... 12, 13, 15, 16

*FBR Capital Mkts. & Co. v. Short,*
No. 1:09-cv-1016, 2009 WL 3254458 (E.D. Va. Oct. 9, 2009) .............................................. 14

*Fidelity Global Brokerage Grp., Inc. v. Gray,*
No. 1:10CV1255, 2010 WL 4646039 (E.D. Va. Nov. 9, 2010) ......................................... 15, 16

*George & Co., LLC v. Imagination Entm't Ltd.,*
575 F.3d 383 (4th Cir. 2009) .................................................................................................. 13

*Great Am. Ins. Co. v. Gross,*
No. Civ. A 305CV159, 2005 WL 1048752 (E.D. Va. May 3, 2005) ....................................... 17

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,*
174 F.3d 411 (4th Cir. 1999) ............................................................................................ 18, 19

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
313 U.S. 487 (1941) ................................................................................................................ 10

*McInnis v. BAC Home Loan Servicing, LP,*
No. 2:11cv468, 2012 WL 383590 (E.D.Va. Jan. 13, 2012) .................................................... 10

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.,*
722 F.3d 591 (4th Cir. 2013) .................................................................................................... 9

*MicroAire Surgical Instruments, LLC v. Arthrex, Inc.,*
726 F. Supp. 2d 604 (W.D. Va. 2010) ............................................................................... 15, 16

*Moore v. Kempthorne,*
464 F. Supp. 2d 519 (E.D. Va. 2006) ....................................................................................... 9

*Petro Stopping Centers, L.P. v. James River Petroleum, Inc.,*
130 F.3d 88 (4th Cir. 1997) .................................................................................................... 12

*Pizzeria Uno Corp. v. Temple,*
    747 F.2d 1522 (4th Cir. 1984) ................................................................ 12

*R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel,*
    9 F. Supp. 2d 624 (E.D. Va. 1998) ................................................... 18, 19

*Real Truth About Obama, Inc. v. Fed. Election Comm'n,*
    575 F.3d 342 (4th Cir. 2009) .................................................................. 9

*Rosetta Stone Ltd. v. Google, Inc.,*
    676 F.3d 144 (4th Cir. 2012) ................................................................ 13

*Scotts Co. v. United Industries Corp.,*
    315 F.3d 264 (4th Cir. 2002) ........................................................... 14, 15

*Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship,*
    No. 1:08cv955 (JCC), 2009 WL 111603 (E.D. Va. Jan. 14, 2009) .......................... 14

*Sunrise Continuing Care, LLC v. Wright,*
    671 S.E.2d 132 (Va. 2009)..................................................................... 10

*Toolchex, Inc. v Trainor,*
    634 F. Supp. 2d 586 (E.D. Va. 2008) ...................................................... 17

*U.S. Jaycees v. San Francisco Jr. Chamber of Commerce,*
    354 F. Supp. 61 (N.D. Cal. 1972), *aff'd,* 513 F.2d 1226 (9th Cir. 1975).................... 13

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008).............................................................................. 9

### Statutes and Codes

United States Code,
    Title 15, section 1114(1) .................................................................... 12

### Rules and Regulations

Federal Rule of Civil Procedure
    Rule 65(c)..................................................................................... 18

## INTRODUCTION

Plaintiff Society for Human Resource Management ("SHRM") is a nonprofit organization serving more than 285,000 human resource ("HR") professionals worldwide. As is common practice with nationwide nonprofit organizations, SHRM charters chapter affiliates that promote SHRM's interests, products, and membership to a local audience. In exchange, SHRM permits its chapter affiliates to hold themselves out as SHRM affiliates and provides to them financial incentives and access to SHRM's resources, branding, administrative support, and membership lists. SHRM's chapters are extremely important to SHRM and the local communities they serve. At the heart of SHRM's chapter structure is an arrangement that permits each SHRM chapter to operate only within its agreed-upon geographic territory.

Defendant Northern California Human Resources Association ("NCHRA")[1] is a SHRM chapter that – despite using the benefits of SHRM affiliation to grow as an organization for more than 50 years – has now decided that it can abandon its obligations to SHRM. NCHRA has created and is marketing a conference under the name "HR West" in Seattle, Washington, to be held on July 15, 2016, and is planning similar conferences in Las Vegas (on October 21, 2016) and in Phoenix (on December 2, 2016). NCHRA is convening and marketing these events to human resource professionals outside of its Northern California territory. As a result, NCHRA is violating its obligations to SHRM and is directly interfering with the territories of other SHRM chapters.

Although SHRM has made it abundantly clear to NCHRA that these events are contrary to SHRM's interests and has repeatedly demanded that NCHRA abide by its

---

[1] NCHRA's registered name is Northern California Human Resources Council.

1

agreement with SHRM and restrict its activities to its designated territory, NCHRA is proceeding with the events. In addition, because NCHRA recognizes the value that offering SHRM professional development credits has to potential attendees, NCHRA is continuing to use SHRM's trademarks to promote these events, in violation of its agreement with SHRM.

If NCHRA is permitted to operate outside of its territory and ignore its contractual obligations to SHRM, other large chapters would follow the lead of NCHRA and would take over the smaller chapters, which would threaten to cause the collapse of SHRM's entire chapter system. Also, SHRM would not be able to fulfill its contractual obligation to provide each chapter with a designated operating territory.

NCHRA's actions have harmed SHRM's goodwill with its chapters and threaten to cause irreparable harm to SHRM, absent injunctive relief. Therefore, SHRM now seeks a preliminary injunction to maintain the status quo.

## STATEMENT OF FACTS

SHRM is a nonprofit organization formed in 1948 to serve the human resource profession worldwide. Formed in Ohio, SHRM maintains its principal place of business in Alexandria, Virginia. SHRM has federally-registered trademarks on its name, acronym, and various logos.

### The Importance of SHRM's Chapter Structure

SHRM has 571 affiliated chapter organizations, each of which serves a specific geographic territory. *See* Declaration of Henry G. Jackson in Support of Plaintiff's Preliminary Injunction Motion ("Jackson Dec.") ¶ 2.

SHRM's chapters are extremely important to both SHRM and the local communities they serve. *Id.* ¶ 6. SHRM chapters allow SHRM to fulfill its mission to serve human resource professionals by providing a local community network for education, thought leadership,

certification, and advocacy to enhance the practice of human resource management nationally, irrespective of a community's size or available resources. *Id.* ¶ 7. Chapters market SHRM's products, including SHRM certification courses and attendance at SHRM annual conferences, which are an important source of revenue for SHRM. *Id.* ¶ 6. SHRM chapters make a positive impact in their communities through services such as resume banks, job fairs, and resume writing workshops. *Id.* ¶ 7. SHRM chapters are also the largest supporters of SHRM's charitable foundation. *Id.* SHRM also has 50 state councils, each comprised of and representing the SHRM chapters located in that state. *Id.* ¶ 11.

Each year, SHRM invests at least $5 million in supporting its chapters and state councils, through support staff, Chapter Support payments, net gains payments, SHRM's Annual Volunteer Leaders' Summit, and other support activities. *Id.* ¶ 8.

To become a SHRM affiliate, an organization submits a Petition to Charter that identifies its proposed geographic territory, which is incorporated into the chapter's name and/or branding. *Id.* ¶¶ 10, 12, Ex. B. It is the longstanding practice of SHRM and its chapters that each SHRM chapter host events and solicit members exclusively within its prescribed geographic territory. *Id.* ¶ 15. This practice ensures that each chapter can garner local resources to support its mission and remain financially viable. *Id.* ¶ 16. It also avoids confusion, permits each chapter to best serve human resource professionals in its territory, and permits SHRM to best assist its chapters and to serve human resource professionals worldwide. *Id.* Moreover, it facilitates SHRM's ability to share member contact information with a SHRM chapter for individuals who are located within the SHRM chapter's zip codes but who are not already members of the chapter. *Id.* This is an important way for chapters to solicit new membership and attendance at their

events, which allows the chapters to remain financially viable and continue serving HR

professionals and promoting SHRM's mission within the local communities. *Id.* ¶ 17.

**The Northern California Human Resources Association**

The Northern California Human Resources Association ("NCHRA"), one of SHRM's

oldest and largest chapters, became a SHRM affiliate in 1962. *Id.* ¶¶ 23, 28, Ex. E. As its name

indicates, it serves Northern California. *Id.* ¶ 23. Its longstanding territory has been limited to a

specific zip code range: 94000 to 95599. *Id.* Approximately 1,300 members of SHRM also

belong to NCHRA and rely on NCHRA to provide services locally that complement those of

SHRM, such as continuing education required to maintain SHRM certification. *Id.* ¶ 24.

Since its formation, NCHRA has marketed itself as a SHRM affiliate serving Northern

California. *Id.* ¶ 39. It offers California-specific training and educational events, which it holds

in San Francisco and surrounding cities such as San Jose, Walnut Creek, Santa Rosa, Fairfield,

Oakland, Santa Clara, and Redwood City, California. *Id.* ¶¶ 39, 53. Its headquarters and

resources are located in San Francisco. *Id.* ¶ 23. For the past thirty-two years, NCHRA has held

its flagship conference in San Francisco. *Id.* ¶ 48.

NCHRA's affiliation with SHRM is governed by NCHRA's charter, entered into by the

parties on January 12, 2006 (the "Charter"). *Id.* ¶ 31, Ex. H. The Charter declares that SHRM

and NCHRA's chapter relationship is "for the mutual benefit of the NCHRA and SHRM and

their members" and that "[t]he purposes of NCHRA must be in furtherance of the purposes of

SHRM, and consistent with the SHRM bylaws[.]" *Id.* The Charter, among other things:

- Makes multiple references to NCHRA's "territory" and "service area."

- Makes NCHRA eligible for incentive payments from SHRM.

- Grants NCHRA a non-exclusive right, by license, to the list of names and mailing
  addresses of SHRM members "within NCHRA's Territory" who are not members of
  NCHRA.  NCHRA agreed to use this list only for NCHRA's "internal purposes."

- Grants NCHRA a non-exclusive right, by license, to use SHRM's trademarked name,
  acronym, logo, and other marks.  NCHRA agreed that it would "not use the Licensed
  Marks in any manner that is inconsistent with the purposes of SHRM or in any
  manner which would damage the reputation of SHRM, or adversely affect the validity
  of SHRM's rights in the Licensed Marks" and that it would "not use any of the
  Licensed Marks to indicate or imply endorsement or sponsorship by SHRM without
  the express written consent of SHRM."

- Provides that NCHRA's SHRM chapter status may be withdrawn by SHRM in
  accordance with certain notice procedures set forth in NCHRA's bylaws.

*Id.* ¶¶ 32-36.

## NCHRA's Expansion into Other SHRM Chapters' Territories

In the fall of 2015, NCHRA sought SHRM's permission to formally change NCHRA's
name to "HR West." *Id.* ¶ 40.  SHRM rejected this request because it was concerned that "HR
West" incorrectly implied that NCHRA served the entire West coast, which would cause, among
other problems, other chapters to lose their perceived value to members. *Id.* SHRM's chapters
in California shared SHRM's concerns and agreed with SHRM's rejection of NCHRA's
proposed name change. *Id.* ¶ 40; Declaration of Michael Letizia of San Joaquin Human
Resource Association ("SJHRA") ¶¶ 10-11 ("We adamantly opposed the change in name since
we believe it impacted SJHRA and other West Coast chapters"); Declaration of Julie Worley of
Sacramento Area Human Resource Association ("SAHRA") ¶¶ 10-11 (same).  SHRM allowed

NCHRA to use the "HR West" name in a limited capacity for certain activities: its annual conference in San Francisco and its magazine. Jackson Dec. ¶ 40.

Nonetheless, NCHRA was apparently determined to move forward with its plans to expand beyond its designated territory. Unbeknownst to SHRM until recently, NCHRA applied for trademark registration for the name "HR West" in February 2016. *Id.* ¶ 42. Soon thereafter, NCHRA announced during its presentations at its conference in San Francisco that it was planning to host conferences in Seattle, Phoenix and Las Vegas in 2016. *Id.* ¶ 43. NCHRA did not announce any specifics about these events at that time. *Id.* SHRM's representative immediately conveyed SHRM's disapproval of NCHRA's plans to host events outside of NCHRA's territory to NCHRA's President. *Id.*

On April 21, 2016, NCHRA sent a mass email announcing the event "HR West 2016 – Seattle – HR in the Most Innovative Place on Earth" to be hosted by NCHRA on July 15, 2016, in Seattle, Washington (the "Seattle Event"). *Id.* ¶ 45. The email advertised a special attendance rate for SHRM members. *Id.* NCHRA began advertising the Seattle Event prominently on the front page of the website it created, hrwest.org. *Id.* ¶ 47. Using the event as an opportunity to solicit new members for NCHRA, it advertised a special "Join NCHRA" rate. *Id.* ¶ 50. NCHRA also advertised five SHRM professional development credits for attendance at the Seattle Event. *Id.* ¶ 49. NCHRA never sought or obtained SHRM's consent to use SHRM's trademarks for the Seattle Event. *Id.*

NCHRA also began advertising similar events in Las Vegas, Nevada, to be held on October 21, 2016 (the "Las Vegas Event"), and Phoenix, Arizona, on December 2, 2016 (the "Phoenix Event"). *Id.* ¶ 51. The registration pages for these events offer a discounted registration fee for SHRM members and advertise five SHRM professional development credits

6

for attendance at each event. *Id.* NCHRA never sought, or obtained, SHRM's consent to use SHRM's trademarks for these events. *Id.* These pages also advertise a special "Join NCHRA" rate for attendance at the Las Vegas and Phoenix events. *Id.*

After receiving a copy of NCHRA's email announcing the Seattle Event, SHRM sent a letter to the President of NCHRA's Governing Board demanding that NCHRA immediately cancel the Seattle Event because it violated the terms of NCHRA's affiliation agreement with SHRM, cease use of the "HR West" brand for NCHRA programs outside of its territory, and confine its programs to its agreed-upon territory. *Id.* ¶ 54, Ex. W. NCHRA rejected this request, as well as several subsequent requests, asserting that the Seattle, Phoenix, and Las Vegas Events "fit[] well with NCHRA's Mission" and that NCHRA has a responsibility to maintain the viability of its business by expanding its operations. *Id.* ¶ 55, Ex. X. NCHRA has continued to advertise the events – knowing full well that SHRM does not approve of them – using SHRM's name and offering SHRM professional development credits. *Id.* ¶ 58. It has also continued to offer a special "Join NCHRA" attendance rate to solicit NCHRA membership. *Id.* ¶ 59. NCHRA is the only SHRM chapter that has asserted it has the right to operate outside of its geographic territory. *Id.* ¶ 60.

## The Widespread Consequences of NCHRA's Actions

NCHRA's determination to expand beyond its long agreed-upon territory has caused, and will continue to cause, serious consequences to SHRM and its goodwill with its chapters. As one of SHRM's "mega chapters," NCHRA sets an example that other SHRM chapters, particularly the large ones, are likely to follow. *Id.* ¶ 61. Permitting NCHRA to operate outside of its territory would threaten to cause SHRM's entire locally-based chapter system to collapse,

depriving SHRM of an essential part of its operations and revenue, and making SHRM unable to fulfill its mission to serve HR professionals via its chapters. *Id.* ¶¶ 61-64.

Moreover, NCHRA's actions would harm SHRM's chapters and the local communities they serve. Indeed, NCHRA's marketing for its Seattle, Phoenix, and Las Vegas Events has already generated concerns among the SHRM chapters that serve those cities. The Lake Washington Area Human Resource Association ("LWHRA"), which serves the Seattle area, stated that NCHRA's marketing emails for its Seattle Event had led to concerned inquiries from LWHRA's members. Declaration of Nathan Deily of LWHRA ¶¶ 11-14. LWHRA immediately conveyed its disapproval of NCHRA's Seattle Event and marketing to LWHRA members directly to NCHRA's Chief Executive Officer, who acknowledged that NCHRA's Seattle Event "represented direct competition for the limited amount of funds available to [LWHRA's] current and prospective members to use on events of this nature[.]" *Id.* ¶ 12. SHRM's Washington state council expressed similar concerns about the negative impact of the Seattle Event for all SHRM chapters in Washington State. *See* Declaration of Roshelle Pavlin of Washington State Human Resources Council ("WSHRC") ¶ 12 ("NCHRA and its Seattle event will undermine the efforts of Chapters in the state to attract new members and successfully host professional development events within Washington.").

Southern Nevada SHRM ("SNVSHRM") stated that if NCHRA goes forward with its event in Las Vegas, which it planned without SNVSHRM's permission or knowledge, it "would cause great confusion among [SNVSHRM's] members and potential members in Southern Nevada" and would "undermine SNVSHRM's efforts to attract new members and host professional development events within Southern Nevada." Declaration of Cynthia M. Dobek of SNVSHRM ¶ 13.

SHRM of Greater Phoenix ("SHRMGP") stated that NCHRA hosting an event in December in Phoenix "could have a significant negative impact on SHRMGP's membership levels for 2017 and ability to attract new members for the January 1st membership year" because SHRMGP has calendar year membership cycle.  Declaration of Lorie Birk of SHRMGP ¶ 11.

California SHRM chapters also have expressed their concerns about the consequences of NCHRA's attempted expansion.  *See* Declaration of Michael Letizia of SJHRA ¶ 15 ("If NCHRA proceeds with its Seattle, Phoenix and Las Vegas events using the "HR West" moniker, it would cause great confusion among HR professionals in the entire Western region, who may believe that NCHRA's territory is broader than it actually is, and HR professionals may join NCHRA instead of joining SJHRA"); *see also* Declaration of Julie Worley of SAHRA ¶ 15 ("NCHRA's offers to members in Sacramento, CA confuse SAHRA members . . . these efforts in Sacramento undermine SAHRA's efforts to attract new members and host professional development events within the Sacramento, CA area.").

## ARGUMENT

I.   **This Court Should Issue A Preliminary Injunction to Prevent Irreparable Harm to SHRM.**

A preliminary injunction should be issued where the movant establishes four elements: (1) it is likely to succeed on the merits; (2) it is "likely to suffer irreparable harm" in the absence of preliminary relief; (3) the "balance of hardships tips in [its] favor"; and (4) "the injunction is in the public interest." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006).  The moving party bears the burden of persuasion on each of the four factors.  *Winter*, 555 U.S. at 20; *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d

9

342, 345 (4th Cir. 2009) (plaintiff must make a "clear showing" that it is likely to succeed on the merits and is likely to be irreparably harmed absent preliminary relief).

Here, SHRM satisfies each of these four elements.

**A.      SHRM is Likely to Succeed on the Merits of its Breach of Contract and Trademark Infringement Claims against NCHRA.**

SHRM's complaint alleges two claims against NCHRA:  (i) breach of contract and (ii) trademark infringement.  SHRM is likely to succeed on both claims.

**i.      SHRM is Likely to Succeed on its Breach of Contract Claim.**

SHRM is likely to succeed on its breach of contract claim.  Under Virginia law,[2] a breach of contract is established by "(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) injury or damage to the plaintiff caused by the breach of obligation." *McInnis v. BAC Home Loan Servicing, LP*, No. 2:11cv468, 2012 WL 383590, at *6 (E.D.Va. Jan. 13, 2012) (quoting *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009)).

NCHRA has long agreed to limit its activities to its Northern California territory. NCHRA's name, approved by SHRM, refers to its territory, "Northern California."  Many documents over past decades, including NCHRA's press releases and merger agreements

---

[2]  Under the rule in *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), a federal court in Virginia in a diversity jurisdiction case, as here, must apply Virginia choice-of-law rules.  There is no choice-of-law provision in the Charter.  Therefore, under Virginia choice-of-law rules, Virginia law governs this dispute because Virginia is where the majority of NCHRA's obligations under the agreement were to be performed.  *See Best Med. Int'l v. Tata Elxsi Ltd.*, No. 1:10-CV-01273 (IDD), 2011 WL 5843627, at *4 (E.D. Va. Nov. 21, 2011) (citing *Chesapeake Supply and Equip. v. J.I. Case Co.*, 700 F. Supp. 1415, 1417 (E.D.Va. 1988)).  For example, NCHRA submits an annual year-end report to SHRM at its Virginia office, which details NCHRA's yearly activities, finances, and membership, on which basis SHRM determines that NCHRA remains a chapter in good standing and issues Chapter Support payments to NCHRA; NCHRA often sends communications to SHRM at its Virginia office, including to request that SHRM send email marketing to SHRM members on NCHRA's behalf (most recently in February 2016 to advertise its March 2016 conference); and a NCHRA representative attends SHRM's Annual Volunteer Leaders' Summit every year, which was held in Virginia from 2009-2011.  *See* Jackson Dec., ¶¶ 25, 26, 33.  Moreover, NCHRA's contract with SHRM to deliver SHRM certification products contains a Virginia choice-of-law and Virginia choice-of-forum provision. *Id.*, ¶ 38, Ex. M.  The amendment to this contract was executed by NCHRA in-person in Virginia in November 2014. *Id.*

with other chapters, refer to NCHRA's territory of Northern California. *Id.* ¶ 38. Indeed, when NCHRA sought to change its name to "HR West" in 2015, SHRM denied the request because it overstated NCHRA's geographic scope. *Id.* ¶ 40.

In January 2006, NCHRA and SHRM executed a Charter agreement, formalizing the parties' decades-long affiliation agreement. The Charter states that it is "intended to provide protection and guidance regarding each party's rights and responsibilities." *Id.*, Ex. H, ¶ 2. The Charter created binding obligations for NCHRA and confirmed NCHRA's longstanding agreement to operate only within its Northern California territory. The Charter refers to NCHRA's "territory" three times and its "service area" two times. *Id.*, Ex. H, ¶¶ 11, 13. It provides that NCHRA agrees to act only "in furtherance of the purposes of SHRM," *id.*, Ex. H, ¶ 2, and that NCHRA would not use any of SHRM's licensed trademarks "in any manner that is inconsistent with the purposes of SHRM" or use the marks to indicate SHRM's endorsement or sponsorship without SHRM's express consent. *Id.*, Ex. H, ¶ 9.

It is clear from the parties' longstanding course of dealing, over many decades, that NCHRA has agreed that its "territory" and "service area" refer to NCHRA's designated territory of Northern California and that NCHRA will limit its activities to its designated territory.

NCHRA has intentionally violated these obligations by creating and promoting its Seattle, Phoenix, and Las Vegas Events outside its long-established geographic territory, knowing that the events go against SHRM's best interests and despite its obligation to act only in SHRM's best interests.

Other SHRM chapters understand and agree that they are permitted to operate only within their agreed-upon geographic territories. *See, e.g.*, Declaration of Nathan Deily of

LWHRA ¶ 9 ("My understanding has always been that LWHRA is only permitted to host events within the Seattle, Washington Area"); Declaration of Michael Letizia of SJHRA ¶ 9 (stating that SJHRA is only permitted to host events within San Joaquin County); Declaration of Cynthia M. Dobek of SNVSHRM ¶ 9 (stating that SNVSHRM is permitted to host events only within Southern Nevada and has never hosted any events outside this territory).

Making matters worse, NCHRA has marketed its events as qualifying for SHRM professional development credits and offered a discounted attendance fee to SHRM members, violating its obligation not to use SHRM's trademarks to "indicate or imply endorsement or sponsorship by SHRM" without SHRM's consent.

The breaches by NCHRA have damaged and, if not enjoined, will continue to damage SHRM. Accordingly, SHRM is highly likely to succeed on its breach of contract claim.

### ii.    SHRM is Likely to Succeed on its Trademark Infringement Claim.

SHRM is also likely to succeed on its trademark infringement claim. To establish a trademark infringement claim, a plaintiff must prove (1) that it has a valid, protectable trademark and (2) that the defendant's use of a "reproduction, counterfeit, copy, or colorable imitation" of that trademark creates a "likelihood of confusion." *Dynamic Aviation Group Inc. v Dynamic Int'l. Airways, LLC*, No. 5:15-CV-00058, 2016 WL 1247220, at *16 (W.D. Va. Mar. 24, 2016) (quoting *Petro Stopping Centers, L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 91 (4th Cir. 1997) (citing 15 U.S.C. § 1114(1))).

"In applying this test, it is not necessary for the owner of the registered trademark to show actual confusion: '[t]he test is whether there is a likelihood of confusion.'" *Dynamic Aviation*, 2016 WL 1247220, at *16 (quoting *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)). "A likelihood of confusion exists if 'the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services

in question.'" *Dynamic Aviation*, 2016 WL 1247220, at *17 (quoting *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009));[3] *see generally U.S. Jaycees v. San Francisco Jr. Chamber of Commerce*, 354 F. Supp. 61, 71, 78 (N.D. Cal. 1972), *aff'd*, 513 F.2d 1226 (9th Cir. 1975) (permanently enjoining a disaffiliated local chapter from using national organization's trademarks while continuing to perform the same services as it had while affiliated with the national organization because chapter's use of the national organization's marks was likely to confuse the public; the designations were associated in the public mind with the national organization).

Here, SHRM has federally registered trademarks for its name, acronym "SHRM," and various logos. Federal registration of a trademark is "prima facia evidence that the registrant is the owner of the mark." *George & Co.*, 575 F.3d at 400, n.15. As to the second prong, NCHRA's use of SHRM's marks in its marketing for the Seattle, Las Vegas, and Phoenix events is highly likely to confuse the public. SHRM's marks are distinctive. Because SHRM is the world's largest society representing the human resource profession, it is likely that every human resource professional knows SHRM's name and understands the meaning of "SHRM professional development credits."

NCHRA touts that it is a SHRM affiliate, and it has used SHRM's marks in multiple instances to promote the three events: in its email advertisements about the Seattle Event, as well as on the registration page for each of the three events. By asserting that it is a SHRM affiliate,

---

[3] The Fourth Circuit considers nine non-exhaustive factors in this analysis:

> (1) The strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Dynamic Aviation*, 2016 WL 1247220, at *18 (quoting *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 153 (4th Cir. 2012)).

offering a discounted registration fee to SHRM members, and promising SHRM professional

development credits for attendance at each event, NCHRA is intentionally taking advantage of

SHRM's name recognition, knowing from past experience that SHRM affiliation and SHRM

professional credits are important ways to attract attendees to an event. NCHRA is misleading

HR professionals into thinking that SHRM endorses, or is even co-sponsoring, the events –

when, in fact, the very opposite is true. Thus, SHRM is likely to establish both prongs of a

trademark infringement claim and likely will succeed on this claim as well.

**B.**     **SHRM Will Suffer Irreparable Harm Absent Injunctive Relief, and the Balance of Hardships is in SHRM's Favor.**

To establish irreparable harm on a preliminary injunction motion, a plaintiff must show

that the harm will be "actual and immediate," not "speculative or remote in time." *FBR Capital*

*Mkts. & Co. v. Short*, No. 1:09-cv-1016, 2009 WL 3254458, at *4 (E.D. Va. Oct. 9, 2009);

*Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, No. 1:08cv955 (JCC), 2009 WL

111603, at *2 (E.D. Va. Jan. 14, 2009). This Court then "must balance the competing claims of

injury and must consider the effect on each party of the granting or withholding of the requested

relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).

**i.**     **The Harm to SHRM is Serious and Impossible to Measure in Monetary Damages.**

In trademark infringement cases, "a presumption of irreparable injury is generally applied

once the plaintiff has demonstrated a likelihood of confusion." *Allegra Network LLC v. Reeder*,

No. 1:09-cv-912, 2009 WL 3734288, at *3 (E.D. Va. Nov. 9, 2009) (quoting *Scotts Co. v. United*

*Industries Corp.*, 315 F.3d 264, 273 (4th Cir. 2002)). "A defendant's unauthorized use of a

plaintiff's trademarks gives rise to irreparable injury as it causes a plaintiff to lose control of its

business reputation, there is a substantial likelihood of confusion to the purchasing public, there

may be no monetary recovery available, and there is an inherent injury to the goodwill and reputation of the plaintiff." *Id.* (citation omitted).[4]

Further, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Allegra*, 2009 WL 3734288, at *4 (internal citations omitted). "[L]oss of clients' goodwill and future business ... [is] difficult, if not impossible, to measure fully." *Fidelity Global Brokerage Grp., Inc. v. Gray*, No. 1:10CV1255, 2010 WL 4646039, at *3 (E.D. Va. Nov. 9, 2010) (internal quotation omitted); *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F. Supp. 2d 604, 635 (W.D. Va. 2010) (loss of goodwill or industry reputation "is a well-recognized basis for finding irreparable harm.").

Here, it is impossible to monetize the harm that NCHRA's actions will cause to SHRM, absent injunctive relief. For nearly seventy years, a key part of SHRM's success has been its chapter model. Jackson Dec. ¶ 64. SHRM relies on its chapters to promote SHRM certification courses, attendance at SHRM conferences, and SHRM membership, which are the main sources of revenue that allow SHRM – a nonprofit organization – to function. *Id.* ¶ 6. In exchange, SHRM chapters rightfully expect to receive their benefits of the bargain: the right to service members within an exclusive territory.

Maintaining these boundaries and, hence, the goodwill of SHRM chapters, is essential to SHRM's continued existence and success. If NCHRA is permitted to act outside the bounds of its territory and ignore its long-honored obligations to SHRM – while still using the benefits of SHRM affiliation and SHRM's trademarks to attract membership – there would be nothing to stop other SHRM chapters across the country from doing the same, particularly the large "mega

---

[4]   Although there is a "growing confusion about the presumption of irreparable harm in trademark cases," *see Dynamic Aviation*, 2016 WL 1247220, at *28, n. 18, the Fourth Circuit has not yet ruled on the question. The court in *Dynamic Aviation* declined to offer an opinion.

chapters" that look to NCHRA for cues. *Id.* ¶ 61. Chapters that serve the areas where NCHRA hosts events would lose their right to a designated area of operation and may lose their perceived value to their members, who likely would be confused about which organization serves their area and may join NCHRA instead of their appropriate chapter. *Id.* ¶ 40. This, in turn, would deprive SHRM chapters of essential revenue, which would make it impossible for SHRM chapters to continue operations. *Id.* ¶ 62. NCHRA's actions threaten to cause SHRM's organizational model – one that has been a cornerstone of its success for nearly 70 years – to fall apart. *Id.* ¶ 64. It would be extremely difficult – if not impossible – to compensate for this loss of goodwill and future business with money damages. *See Fidelity Global*, 2010 WL 4646039, at \*3; *MicroAire Surgical Instruments*, 726 F. Supp. 2d at 635.

ii.    **The Balance of Hardships Tips Heavily in SHRM's Favor.**

The balance of the hardships in this matter "tips heavily in favor of an injunction." *See Fidelity Global Brokerage Group*, 2010 WL 4646039, at \*4. The potential harm to SHRM, absent injunctive relief, is significant, while the potential harm to NCHRA of complying with an injunction is minimal.

SHRM is a national organization responsible for overseeing 571 chapters, each of which abides by the same obligations as NCHRA agreed to when it affiliated as a chapter. *Id.* ¶¶ 2-3. SHRM chapters keep close tabs on each other and look to each other for cues. *Id.* ¶ 61. If NCHRA is allowed to proceed as it wishes and operate outside of its territory, NCHRA would upend SHRM's entire organizational model, goodwill, and reputation in the industry. *Id.* ¶ 64. Indeed, SHRM has already heard complaints from its chapters impacted by NCHRA's planned events in Washington State, Nevada, and Arizona, and they are unhappy and concerned about NCHRA's attempts to expand outside its territory. *Id.* ¶ 46, 63. NCHRA's actions as a "mega chapter" have widespread consequences that would threaten the viability of other SHRM

chapters, on whom SHRM depends to provide services locally that complement those of SHRM. *Id.* ¶ 61.

NCHRA, on the other hand, is just one SHRM chapter among 571. It has, for "32 years," as it notes on its website, held its flagship event within its territory in San Francisco. *Id.* ¶ 48, Ex. R. Indeed, it has held *all* its events within its Northern California territory, until now. *Id.* ¶ 53. The burden on NCHRA if required to continue hosting its flagship event in San Francisco this year, as it has for many years, should be minimal, if any. San Francisco is where NCHRA's offices and resources are located. *Id.* ¶ 48. The potential hardship to NCHRA from an injunction here is temporary and limited to simply changing the logistics for its upcoming event planned for Seattle on July 15, 2016, and its Phoenix and Las Vegas events in October and December 2016, and ceasing planning any further activities under the "HR West" name outside of its Northern California territory.

Simply put, there are no long-term consequences to NCHRA, while there are enormous long-term consequences at stake for SHRM. The balance of the hardships, therefore, heavily weighs in favor of the issuance of an injunction here.

###        C.     An Injunction is in the Public Interest.

Finally, an injunction would promote the public interest here. "[I]t is in the public interest to see parties abide by their contractual obligations." *Great Am. Ins. Co. v. Gross*, No. Civ. A 305CV159, 2005 WL 1048752, at *6 (E.D. Va. May 3, 2005). Moreover, "[p]reventing consumers from being confused serves the public interest, as does preventing trademarks from being used deceptively[.]" *Toolchex, Inc. v Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008) (internal citation omitted) (the public interest supported granting injunction against independent contractor that was using trademark without authorization to misrepresent itself as trademark owner's employee).

17

Moreover, issuance of an injunction would promote the interests of the human resource profession. Numerous SHRM chapters have expressed their concerns about the potential harm to their chapters from NCHRA's actions, their desire to stop NCHRA from operating outside its territory, and their belief that NCHRA's actions are likely to confuse their chapters' members or potential members and could make it more difficult for chapters to recruit members. *See, e.g.*, Declaration of Michael Letizia of SJHRA ¶¶ 15-16 (stating that, if NCHRA proceeds with its Seattle, Phoenix and Las Vegas events, it "would cause great confusion among HR professionals in the entire Western region," and will "undermine SJHRA's efforts to attract new members and host professional development events within the San Joaquin County area"); Declaration of Cynthia M. Bobek of SNVSHRM ¶ 13 (stating that, if NCHRA proceeds with its Las Vegas event, it would cause great confusion among SNVSHRM members and potential members in Southern Nevada); Declaration of Lorie Birk of SHRMGP ¶ 11 (noting that NCHRA's hosting an event in December in Phoenix could have a significant negative impact on the chapter's membership levels for 2017 and ability to attract new members for the January 1st membership year).

Thus, this Court should issue a preliminary injunction because SHRM satisfies all the required elements.

## II.   SHRM Should Not Be Required to Post a Bond.

Although the decision of whether to require a bond is strictly circumscribed by Federal Rule of Civil Procedure 65(c), determination of the bond amount is within the district court's sound discretion. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 & n.3 (4th Cir. 1999); *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 9 F. Supp. 2d 624, 641 (E.D. Va. 1998), *aff'd in part, rev'd in part on other grounds*, 171 F.3d 943 (4th Cir. 1999). Depending on the circumstances, bond might be as little as zero dollars. *See R.M.S. Titanic*, 9

F. Supp. 2d at 641 (bond of zero dollars with no security required).  Alternatively, this amount might be merely nominal.  *See Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*, 23 F. App'x 134, 139 (4th Cir. 2001) (affirming bond of $500); *Hoechst Diafoil*, 174 F.3d at 421 & n.3 ("nominal bond may suffice").  When determining the bond amount, courts consider the applicant's likelihood of success on the merits, the speculative and minimal nature of the damages to the opposing party, and the urgency of the action.  *Candle Factory*, 23 F. App'x at 139; *R.M.S. Titanic*, 9 F. Supp. 2d at 641 (considering speculative and minimal nature of damages to opposing party and applicant's likelihood of success on merits); *Hoechst Diafoil*, 174 F.3d at 421 n.3 (nominal bond sufficient where risk of harm is remote or circumstances otherwise warrant it).

Here, SHRM should not be required to post a bond because SHRM is likely to succeed on the merits of its breach of contract and trademark infringement claims.  The need for injunctive relief is urgent, as the Seattle Event is fast approaching, and NCHRA continues to move forward with its planning of the Phoenix and Las Vegas events.  The imposition of an injunction would simply require NCHRA to honor its contractual obligations and cease using SHRM's trademarks to promote these events.  A bond, therefore, is unnecessary, or should be nominal.

## CONCLUSION

For the foregoing reasons, SHRM respectfully requests that this Court issue a preliminary injunction (i) barring NCHRA from proceeding with its Seattle, Phoenix, or Las Vegas Events, or any other events outside NCHRA's Northern California territory, (ii) requiring NCHRA to cease its unauthorized use of SHRM trademarks in connection with these events, and (iii) requiring NCHRA to cease its use of the "HR West" name in any activities outside of its

Northern California territory.  In addition, SHRM respectfully submits that no bond should be required.

Dated: May 31, 2016

Respectfully submitted:

Michael Warley (VA Bar: 88075)
Jerald A. Jacobs (*Pro hac forthcoming*)
Alvin Dunn (*Pro hac forthcoming*)
Sara E. Stinson (*Pro hac forthcoming*)
Pillsbury Winthrop Shaw Pittman, LLP
1200 Seventeenth Street NW
Washington, DC  20036-3006
Tel:  (202) 663-8000
Fax:  (202) 663-8007
michael.warley@pillsburylaw.com
jerry.jacobs@pillsburylaw.com
alvin.dunn@pillsburylaw.com
sara.stinson@pillsburylaw.com
*Attorneys for Society for Human Resource Management*