**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| Society for Human Resource Management, | Civil Action No. 1:16-cv-00596-AJT-TCB |
| *Plaintiff*, | Judge Anthony Trenga |
| vs. | |
| Northern California Human Resources Council, | |
| *Defendant*. | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

_/s/ Michael Warley_
Michael Warley (VA Bar: 88075)
Jerald A. Jacobs (*Pro hac vice*)
Alvin Dunn (*Pro hac vice*)
Sara E. Stinson (*Pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN, LLP
1200 Seventeenth Street NW
Washington, DC  20036-3006
Tel:  (202) 663-8000
Fax:  (202) 663-8007
michael.warley@pillsburylaw.com
jerry.jacobs@pillsburylaw.com
alvin.dunn@pillsburylaw.com
sara.stinson@pillsburylaw.com
*Attorneys for Society for Human Resource Management*

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................3

    I.    This Court Has Personal Jurisdiction over NCHRA. .............................................3

        A.  This Court May Exercise General Personal Jurisdiction Over NCHRA, Which Has Had "Continuous And Systematic" Contacts With Virginia. ...........................4

        B.  NCHRA Has Purposefully Availed Itself of the Privileges of Doing Business in Virginia. .................................................................................................5

    II.   SHRM Has Met its Burden to Obtain a Preliminary Injunction. .................................7

        A.  NCHRA Agreed to Operate Only in its Territory. .............................................7

        B.  NCHRA Continues to Infringe SHRM's Trademarks. .......................................9

        C.  The Potential Harm to NCHRA is Limited to Financial Expenses that it Incurred at its Own Risk. ...............................................................................10

    III.  SHRM Has No Other Adequate Remedy. .................................................................11

    IV.  NCHRA's "Policy" Arguments are Baseless. .............................................................13

CONCLUSION ..................................................................................................................14

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Consulting Engineers Corp. v. Geometric Ltd.*,
  561 F.3d 273 (4th Cir. 2009) ...................................................................3, 5, 6

*Fidelity Global Brokerage Grp., Inc. v. Gray*,
  No. 1:10CV1255, 2010 WL 4646039 (E.D. Va. Nov. 9, 2010) ...............................11

*Hampton Audio Electronics, Inc. v. Contel Cellular, Inc.*,
  966 F.2d 1442, 1992 WL 131169 (4th Cir. 1992) ...................................................12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)................................................................................................3

*In re Franklin Equip. Co.*,
  418 BR 176 (Bankr. E.D. Va 2009)........................................................................7

*Insight Holding Group LLC v. Sitnasuak Native Corp.*,
  685 F. Supp. 2d 582 (E.D.Va 2010) .......................................................................3

*Lib. Mut. Fire Ins. V. Menozzi Luigi & C. S.P.A.*,
  92 F. Supp. 3d 435 (E.D.Va. 2015) ........................................................................6

*Noble Sec. Inc. v. MIZ Engineering Ltd.*,
  611 F. Supp. 2d. 513 (2009) ...................................................................................4

*Satellite Television & Associated Resources, Inc. v. Continental Cablevision of
  Va., Inc.*, 714 F.2d 351 (4th Cir. 1983)..................................................................13

*Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*,
  763 F.2d 604 (4th Cir. 1985) .................................................................................12

*Thompson Everett, Inc. v. Nat'l Cable Advertising, L.P.*,
  57 F.3d 1317 (4th Cir. 1995) .................................................................................12

*Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co.*,
  682 F.3d 292 (4th Cir. 2012) ...................................................................................5

*Zenith Data Sys. Corp. v. Electronic Data Sys. Corp*,
  1997 U.S. App. LEXIS 34237 (4th Cir. 1997) .......................................................7

Statutes and Codes

Virginia Code Ann.
    Section 8.01-328.1 ......................................................................................................3
    Section 8.2-202 ..........................................................................................................7

## INTRODUCTION[1]

NCHRA knew full well, long before it announced the Seattle Event, that it and all other

SHRM chapters have agreed to operate only within their designated territories and that SHRM

vehemently disapproved of any efforts by NCHRA to expand beyond its own territory of

Northern California. SHRM made clear its disapproval in the fall of 2015 when SHRM rejected

NCHRA's request to change its name to "HR West" because the new name would overstate

NCHRA's geographic territory (a fact that NCHRA ignores in its opposition brief). SHRM

again made clear its disapproval as soon as NCHRA declared that it would host events in Seattle,

Phoenix, and Las Vegas. NCHRA is the only SHRM affiliate, out of 571 chapters and 50 state

councils, that contends it can operate wherever it pleases, without limitation to its geographic

territory.

NCHRA first seeks to salvage its improper events by arguing that this Court lacks

personal jurisdiction over it. Yet NCHRA expressly agreed to submit to Virginia jurisdiction as

part of its ongoing delivery partnership agreement with SHRM – an agreement on which

NCHRA relies to justify its use of SHRM's trademarks. NCHRA cannot have its cake and eat it

too. Moreover, NCHRA ignores its numerous contacts with Virginia over the course of its more

than 50-year business relationship with SHRM, headquartered in Virginia, and the many ways

that NCHRA has "purposefully availed itself" of the privileges of doing business in Virginia. It

should have anticipated being sued in Virginia, it has agreed to be sued in Virginia, and it is

subject to the jurisdiction of this Court.

In order to avoid its agreement to restrict its activities to its Northern California territory,

NCHRA emphasizes a single quote from a 2004 memorandum authored by a SHRM state

---

[1] All acronyms and defined terms, as used herein, have the same meaning as in SHRM's opening memorandum of law in support of its Motion for a Preliminary Injunction (the "SHRM Br.").

council – not by SHRM – related to a scheduling conflict between NCHRA and the neighboring Sacramento SHRM chapter, SAHRA. The full story does not support NCHRA. NCHRA ignores the plain meaning of the terms "Territory" and "service area" as used in its Charter, the ample evidence of the consistent course of performance between the parties, and the sworn declarations of six SHRM chapters, who all uniformly state that "Territory," as used in their charters, refers to their chapter's prescribed service area and that their chapters have operated only in that service area. The existence of territorial restrictions for SHRM affiliates is further confirmed in the sworn declarations of two SHRM state councils.

NCHRA asserts that its use of SHRM's trademarks – which continues to this day – is authorized because NCHRA is a SHRM product delivery partner and is permitted to offer SHRM credits without pre-approval. The delivery contract, however, only permits NCHRA to use SHRM trademarks for certain approved educational courses – it does not extend to a conference held under the name "HR West" far outside of NCHRA's territory.

Finally, NCHRA argues that the balance of equities weighs in its favor simply because, if its Seattle event is enjoined, NCHRA would lose non-refundable deposits and would have to refund registration fees. Yet NCHRA incurred these expenses in the face of SHRM's clear objections and understanding the risk it was taking. NCHRA ignores the wide-reaching consequences of its actions for SHRM, a national organization whose existence has, for decades, depended on its chapter structure that includes agreed-upon operating territories. The balance of equities here weighs in favor of issuing a preliminary injunction.

## ARGUMENT

### I.   THIS COURT HAS PERSONAL JURISDICTION OVER NCHRA.

NCHRA expressly submitted itself to the jurisdiction of Virginia courts by entering into a delivery partner agreement with SHRM that contains a Virginia choice-of-law and forum clause – an agreement on which NCHRA relies to justify its use of SHRM's trademarks.  *See* Opp. Br. 16 (citing Ex. M to the Corrected Declaration of Henry G. Jackson dated June 18, 2016 (ECF 17-1) ("Jackson Dec.")).[2]  NCHRA cannot simultaneously rely on this agreement and deny the applicability of its choice-of-law and choice-of-forum provisions.  *See Insight Holding Group LLC v. Sitnasuak Native Corp.*, 685 F. Supp. 2d 582, 587 (E.D. Va 2010) (citing *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 397 (Va. 1990) (forum selection clauses are "prima facie valid" and "should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable[.]")).

In addition, NCHRA's repeated contacts with Virginia over its decades-long business relationship with SHRM, headquartered in Virginia, permit this Court to exercise personal jurisdiction over NCHRA.  Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, is "intended to extend personal jurisdiction to the extent permissible under the due process clause"; therefore, "the statutory inquiry merges with the constitutional inquiry."  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).  Under the constitutional inquiry, the U.S. Supreme Court recognizes two types of personal jurisdiction:  general and specific.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 411 (1984).  In this case, this Court may exercise either general or specific personal jurisdiction over NCHRA.

---

[2]   This agreement states in Section E as follows:
> Any disputes concerning this Agreement shall be subject to the exclusive jurisdiction of the federal and state courts in Virginia; and the parties hereby submit to the exclusive jurisdiction of the state and federal courts in Virginia over any disputes concerning this Agreement and further agree that they are subject to jurisdiction in Virginia in any such dispute.

Jackson Dec., Ex. M.

**A.     This Court May Exercise General Personal Jurisdiction Over NCHRA, Which Has Had "Continuous And Systematic" Contacts With Virginia.**

Even without an agreement that it is subject to jurisdiction in Virginia, NCHRA may be sued in Virginia because it has had "continuous and systematic" contacts with Virginia. *Noble Sec. Inc. v. MIZ Eng'g Ltd.*, 611 F. Supp. 2d. 513 (2009) (citing *Saudi v. Northrop Grumman,* 427 F.3d 271, 276 (4th Cir. 2005)).  A defendant subject to general personal jurisdiction may be sued in the forum state for any reason, regardless of where the relevant conduct occurred. *See Noble*, 611 F. Supp. 2d at 513 (internal citations omitted).

NCHRA's repeated contacts with Virginia over the course of NCHRA's more than 50-year charter relationship with SHRM subjects NCHRA to general personal jurisdiction in Virginia.  For example, every year since at least as early as 2004, NCHRA has submitted an annual year-end report to SHRM at its Virginia headquarters that details NCHRA's activities, finances, and membership, on which basis SHRM confirms that NCHRA remains a SHRM affiliate in good standing and is permitted to continue holding itself out as a SHRM affiliate for the next calendar year.  Jackson Dec. ¶ 33.  On the basis of the membership numbers reported in that annual report, SHRM issues NCHRA a yearly financial payment, which NCHRA uses to fund its continued operations. *Id.*  NCHRA also has continuously used SHRM's membership database, which SHRM maintains at its Virginia office, to promote NCHRA events. *Id.* ¶ 26.  NCHRA currently has at least one member located in Virginia, *see* Op. Br. 8, to whom, presumably, NCHRA sends its marketing blasts.  NCHRA often sends communications to SHRM at its headquarters in Virginia.  Supplemental Declaration of Henry G. Jackson dated June 21, 2016 ("Supplemental Jackson Dec.") ¶ 5.  Finally, NCHRA's CEO and other representatives have made many in-person visits to Virginia, including to attend a two-day SHRM product delivery partners summit in 2014 at SHRM's headquarters, returning a month

later to negotiate an addendum to the parties' 2012 delivery partner agreement, and to attend SHRM's annual Volunteer Leaders' Summit held in Virginia in 2009-2011. *Id.* ¶ 6.

By maintaining these continuous and systematic contacts with SHRM at its Virginia headquarters, NCHRA could have anticipated that it could be sued in Virginia and therefore is subject to general personal jurisdiction in Virginia. *See Consulting Eng'rs*, 561 F.3d at 277 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (the minimum contacts test "protects a defendant from having to defend himself in a forum where he should not have anticipated being sued")).

**B.      NCHRA Has Purposefully Availed Itself of the Privileges of Doing Business in Virginia.**

Even if this Court does not find that NCHRA is subject to general personal jurisdiction in Virginia, this Court has specific personal jurisdiction over NCHRA. The U.S. Court of Appeals for the Fourth Circuit analyzes the due process requirements for specific personal jurisdiction in three parts: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs*, 561 F.3d. at 278 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002)).

Where an out-of-state defendant has "substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute," the defendant has sufficiently availed itself of the privileges of doing business in the forum. *Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012). NCHRA has collaborated with SHRM for more than fifty years through its affiliation relationship, which is at the heart of this dispute, so has undoubtedly "availed itself" of the privileges of doing business in Virginia.

Moreover, a defendant has "purposefully availed" itself of a forum state when it has agreed that the law of the forum state would govern disputes, or where the defendant made in-person contact with the resident of the forum state regarding the business relationship. NCHRA has done both. *See infra* at 3, 5; *Consulting Eng'rs*, 561 F.3d at 278;

The second prong of specific personal jurisdiction is also met because the basis of this lawsuit is NCHRA's affiliation relationship with SHRM, which is located in Virginia. A claim arises from the defendant's activities directed at the forum where "(1) the activity in the forum state is 'the genesis of [the] dispute'; or (2) substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." *Liberty Mut. Fire Ins. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d 435, 444 (E.D. Va. 2015) (citing *Tire Eng'g and Distrib., LLC*, 682 F.3d at 306). NCHRA asserts that SHRM's complaint is based only on NCHRA's "conduct in California, Arizona, Nevada, and Washington" (*see* Opp. Br. 9), but NCHRA's "conduct" in those states would be utterly irrelevant to SHRM were it not for NCHRA's agreement to abide by the terms of the Charter with SHRM.

Finally, it is constitutionally reasonable[3] for this Court to exercise jurisdiction over NCHRA. Virginia has an interest in adjudicating this dispute, which is between a Virginia-headquartered organization that oversees 571 chapters nationally and one of its chapters. SHRM has a strong interest in obtaining relief immediately, with the Seattle Event fast approaching on July 15, 2016. There is minimal burden on NCHRA to litigate here because NCHRA, in its own words, is "one of the nation's largest human resources associations," with more than 3,000 dues-

---

[3] Courts consider several factors when evaluating this third prong: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs*, 561 F.3d at 279.

paying members in more than half of the states, including in Virginia. *See* Opp. Br. 3. Thus, the

exercise of personal jurisdiction over NCHRA fully comports with due process requirements.

**II.  SHRM HAS MET ITS BURDEN TO OBTAIN A PRELIMINARY INJUNCTION.**

After spending almost half of its opposition brief detailing why the Court lacks

jurisdiction over it, NCHRA glosses over the merits of SHRM's claims and ignores the

declarations from six SHRM chapters and two state councils, each stating that the chapter or

council has agreed to limit its activities to its specified territory.

**A.  NCHRA Agreed to Operate Only in its Territory.**

Since NCHRA petitioned to become a SHRM chapter in 1962, NCHRA has agreed to

limit its activities to its Northern California territory. The words "Territory" and "service area"

in NCHRA's Charter, given their plain meaning, can mean nothing else. Nonetheless, there is

ample evidence of the parties' course of dealing and course of performance that this Court may

consider as further evidence of the parties' agreement. *See In re Franklin Equip. Co.*, 418 B.R.

176, 205-06 (Bankr. E.D. Va. 2009) (citing *Columbia Nitrogen Corp. v. Royster Co.,* 451 F.2d 3,

8–9 (4th Cir. 1971)) ("a finding of ambiguity is not necessary for the admission of extrinsic

evidence about the usage of the trade and the parties' course of dealing"); Va. Code Ann. § 8.2-

202; 8.1A-303. The understanding of a contract by the parties themselves, as evidenced by

course of performance, is "entitled to the greatest weight." *Zenith Data Sys. Corp. v. Electronic

Data Sys. Corp*, 1997 U.S. App. LEXIS 34237, 20-21 (4th Cir. 1997) (internal quotation

omitted).

This evidence includes the following:

- NCHRA's name.

- NCHRA and SHRM's 2012 delivery partner contract, which sets forth the zip code range in Northern California for which NCHRA may offer SHRM products. Jackson Dec. ¶ 38, Ex. M.

- NCHRA's current Bylaws, which state that one of NCHRA's purposes is to "be the voice of the profession on human resource management issues *within the geography serviced*." *Id.* ¶ 37, Ex. J.

- NCHRA-created documents from past years referring to its "service area." *Id.* ¶ 38, Exs. K, L.

- NCHRA's descriptions of itself on its website. *Id.* ¶ 39.

- Unequivocal statements from six other SHRM chapters, each stating that "Territory," as used in its chapter charter refers to an agreed-upon geographic service area. *See, e.g.*, Declaration of Lorie Birk of SHRM of Greater Phoenix (ECF 4-6) ¶ 8; Declaration of Michael Letizia of San Joaquin Human Resource Association (ECF 4-2) ¶ 8.

NCHRA ignores all of this evidence and, instead, relies on a single quote from a 2004 memorandum: "SHRM has indicated that they do not have any policies preventing one chapter from offering services in the service area of another chapter." Declaration of Greg Morton (ECF 16-1) ("Morton Dec."), Ex. 2. This statement – made by two volunteers of the California State Council, not by SHRM – is hearsay and was written three years before the Charter agreement was entered into between NCHRA and SHRM. Moreover, that statement did not alter the agreement between NCHRA and SHRM that NCHRA must limit its activities to its Northern California territory. Indeed, Karen Verrico, who was NCHRA's Executive Director and CEO at the time and was copied on the memorandum, states that the purpose of the memorandum was not to address a change in service areas but to help mediate a scheduling conflict between NCHRA and the Sacramento SHRM chapter, SAHRA. *See* Declaration of Karen Verrico Dated June 22, 2016, ¶ 8. Ms. Verrico confirms NCHRA's agreement to offer events only in its territory: "Throughout NCHRA's history, the delivery of in-person events has been within Northern California." *Id.* ¶ 6. Indeed, the 2004 dispute between NCHRA and SAHRA was resolved amicably when the California State Council established a protocol that any California SHRM chapter that wished to host events in another chapter's territory in California could only

do so with the consent of and in coordination with the other chapter. *See* Supplemental Jackson
Dec. ¶ 9.

**B.      NCHRA Continues to Infringe SHRM's Trademarks.**

NCHRA does not deny that SHRM has valid trademarks on its name and acronyms.
Rather, NCHRA argues it is entitled to use SHRM's trademarks because (i) NCHRA "merely is
offering SHRM members a discount to attend its conferences," (ii) its 2012 and 2014 delivery
partner contracts with SHRM permit it to offer SHRM professional development credits without
pre-approval from SHRM, and (iii) its marketing emails say the Seattle Event is "Co-Presented
by" the "HR Certification Institute" ("HRCI"), which "clearly indicates to human resource
professionals that SHRM is not involved[.]" Opp. Br. 14-16. None of these points has merit.

First, NCHRA vastly understates its use of SHRM's trademarks. NCHRA is doing more
than "merely offering a discount to SHRM members"; it is using SHRM's trademarks on each of
the event webpages and registration forms and in each of the email blasts it sends about the
Seattle Event (including one email advertisement sent on June 2, 2016, just after this litigation
was filed). *See* Supplemental Jackson Dec. ¶ 13, Ex. BB.

Second, the delivery partnership agreements do not permit NCHRA to offer SHRM
professional development credits for events that SHRM has informed NCHRA it has not
approved, and that NCHRA knows are directly *against* SHRM's interests. The agreements only
permit NCHRA to use SHRM's name and logo in connection with particular specific educational
courses – they do not cover conferences hosted by NCHRA under the guise of "HR West." *See*
Jackson Dec., Ex. M. Moreover, NCHRA fails to mention that its Charter (which NCHRA relies
upon to justify its use of SHRM's trademarks, *see* Opp. Br. 14), expressly prohibits NCHRA
from using SHRM's trademarks in connection with products or programs that are contrary to
SHRM's purposes. *See* Jackson Dec., Ex. H, ¶ 9 ("NCHRA shall not use the Licensed Marks in

any manner that is inconsistent with the purposes of SHRM . . . All actions taken by NCHRA, in

connection with the Licensed Marks, and all products, programs, and other services offered by

NCHRA under the Licensed Marks, must be consistent with the purposes of SHRM[.]").

Finally, the fact that NCHRA's marketing email says the Seattle Event is "Co-Presented"

by HRCI does not resolve potential confusion among HR professionals about the events. *See,*

*e.g.,* Declaration of Michael Letizia of SJHRA (ECF 4-2) ¶ 15 ("If NCHRA proceeds with its

Seattle, Phoenix, and Las Vegas events using the "HR West" monitor, it would cause great

confusion among HR professionals in the entire Western region, who may believe that

NCHRA's territory is broader than it actually is[.]").

**C.      The Potential Harm to NCHRA is Limited to Financial Expenses that it
            Incurred at its Own Risk.**

NCHRA seeks to minimize SHRM's harm, Opp. Br. 17, but never seriously disputes the

irreparable injury to SHRM if NCHRA is permitted to operate outside of its territory.[4]  Instead,

NCHRA emphasizes the losses it would suffer as a result of non-refundable expenses it has paid

and refunds it would have to provide.  Opp. Br. 22.

Yet NCHRA incurred expenses and accepted registrations with full knowledge that

SHRM did not approve of NCHRA's plans.  In October 2015, when NCHRA requested to

officially change its name to "HR West," SHRM rejected this request because it overstated the

scope of NCHRA's service area (*see* Jackson Dec. ¶ 40) – a point NCHRA does not mention in

its brief, because it shows that NCHRA was fully aware that SHRM did not approve of any

expansion by NCHRA outside of its Northern California territory.  When NCHRA announced its

---

[4]  NCHRA misstates the law on the requirements for a preliminary injunction motion.  It is not a requirement that
SHRM show an "injury-in-fact" or a "cognizable injury" (*see* Opp. Br. 17) but rather that SHRM will suffer
"irreparable harm" – which it has shown.  Moreover, NCHRA cites to a single case that is inapposite.  *See* Opp.
Br. 17 (citing *Chaplin v. Du Pont Advance Fiber Sys.,* 293 F. Supp. 2d 622 (E.D. Va. 2003)) (evaluating a motion
to dismiss Title VII claims and determining whether the plaintiff could demonstrate an "adverse employment
action" sufficient to state a claim under Title VII).

intention to host events in Seattle, Phoenix, and Las Vegas at its March 2016 conference, a SHRM representative immediately told NCHRA's President that SHRM did not approve. *Id.* ¶ 43. Time and again, when NCHRA persisted with its plans, SHRM asked NCHRA not to proceed, but NCHRA persisted. *See id.* ¶¶ 54-58. Even after SHRM filed this litigation, NCHRA continued to move forward with its plans and collect registration fees, and indeed subsequently slashed those fees by 70% to boost registrations further. Supplemental Jackson Dec. ¶ 13. NCHRA cannot now argue that it must be permitted to proceed with its improper event because NCHRA purposely increased its financial exposure after SHRM filed this lawsuit.

In addition, NCHRA ignores the well-established case law that "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate," *Allegra Network LLC v. Reeder*, 2009 WL 3734288, at \*4 (E.D. Va. 2009 Nov. 4, 2009) (internal citations omitted), and "loss of clients' goodwill and future business ... [is] difficult, if not impossible, to measure fully." *Fidelity Global Brokerage Grp., Inc. v. Gray*, 2010 WL 4646039, at \*3 (E.D. Va. Nov. 9, 2010) (internal quotation omitted) (cited at SHRM Br. 15). The irreparable harm SHRM will suffer, absent injunctive relief, is far greater than NCHRA's mere financial losses. In addition, NCHRA's actions thwart SHRM's ability to fulfill its contracts to provide each chapter with unencumbered access to the SHRM brand in its designated service area. SHRM's entire chapter-based system, its goodwill, and its reputation are at risk because of the consequences of NCHRA's actions.

## III.    SHRM HAS NO OTHER ADEQUATE REMEDY.

NCHRA claims that SHRM must be denied injunctive relief because it has two other remedies available: (i) withdraw NCHRA's chapter status, or (ii) compete against NCHRA. Opp. Br. 20-21. Neither option, however, would alleviate the harm to SHRM.

First, SHRM does not want to disaffiliate NCHRA, one of its largest chapters, and should not be required to do so.  More than 1,500 SHRM members belong to NCHRA and have for many years depended on NCHRA to provide local networking benefits, SHRM programs, volunteer opportunities for professional development, and SHRM educational materials.  *See* Supplemental Jackson Dec. ¶ 16.  Disaffiliation would cause great damage to SHRM's goodwill with these 1,500 SHRM members, who would be displaced and deprived of a local SHRM affiliate for some time.  *Id.*  Disaffiliation would also harm SHRM's goodwill with its chapters. *Id.*  Further, disaffiliating NCHRA would not resolve any of the widespread harm that NCHRA's expansion efforts are causing.  *Id.* ¶ 19.  Indeed, because NCHRA has been a SHRM-branded organization for more than fifty years, disaffiliation of NCHRA would cause further confusion among HR professionals in Northern California, as such professionals may continue to join NCHRA post-disaffiliation, believing that NCHRA remains an affiliate of SHRM as it had for decades.  *Id.* ¶ 18.  This is particularly true because disaffiliating NCHRA would not terminate SHRM's delivery partnership contract with NCHRA, which runs through the end of 2016, so NCHRA would still be permitted to offer SHRM certification products and use SHRM's trademarks in connection with certain educational courses.  *Id.* ¶ 20.

Moreover, SHRM has invested a tremendous amount of money, resources, and time over the past fifty years into NCHRA, which has allowed NCHRA to grow tremendously.  *Id.* ¶ 17.  It would take many years and substantial resources for SHRM to replace a SHRM-branded organization such as NCHRA with a more than fifty-year market presence.  *Id.*  SHRM believes that NCHRA's members prefer that NCHRA maintain its affiliation with SHRM, which is the outcome that would best serve the interests of human resources professionals in Northern California.

SHRM likewise could not avoid the harm NCHRA is causing by "competing" with NCHRA. No business organization competes with its own brand. The harm to SHRM, for which it seeks resolution from this Court, is that NCHRA's actions will have widespread, damaging consequences to SHRM's goodwill with its chapters and its longstanding chapter structure. SHRM competing with NCHRA, or any of its chapters, would cause greater damage to SHRM's goodwill with its chapters, not prevent it. Indeed, the reason SHRM is co-hosting an event in Seattle with Seattle-area chapters on the same day as NCHRA's event is to *protect* these chapters from NCHRA's actions. *Id.* ¶ 12.

## IV.    NCHRA'S "POLICY" ARGUMENTS ARE BASELESS.

NCHRA argues that public policy disfavors an injunction because SHRM's local chapter system is designed to restrain trade in violation of antitrust laws. Opp. Br. at 22-23. However, the Fourth Circuit has repeatedly held that vertical restrictions such as the territorial limitations at issue here imposed by a national organization "are not 'manifestly anticompetitive,' but actually promote interbrand competition." *Hampton Audio Electronics, Inc. v. Contel Cellular, Inc.*, 966 F.2d 1442, 1992 WL 131169, at *3 (4th Cir. 1992) (internal citation omitted); *see also Thompson Everett, Inc. v. Nat'l Cable Advertising, L.P.*, 57 F.3d 1317, 1325 (4th Cir. 1995) ("exclusive sales rep contracts impose non-price vertical restrictions which are not per se illegal under the antitrust laws, and such restrictions are not disfavored as long as they do not go beyond the legitimate business purposes for which they are used"); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.*, 763 F.2d 604, 618 (4th Cir. 1985) ("vertical, intrabrand refusals to deal, on the other hand, may limit *intra* brand competition, but at the same time promote *inter* brand competition, by allowing a manufacturer to achieve certain efficiencies in the distribution of its products") (internal citation and quotation omitted); *Satellite Television & Associated Resources, Inc. v. Continental Cablevision of Va., Inc.*, 714 F.2d 351, 355 (4th Cir. 1983)

("exclusive dealership or territory provisions have been sanctioned because the effected increase in interbrand competition has outweighed the decrease in intrabrand competition"). Thus, SHRM's territorial restrictions for its chapter network, which are a common feature of national professional societies, are lawful and pro-competitive.

## CONCLUSION

For the foregoing reasons, and the reasons stated in SHRM's opening memorandum of law, SHRM respectfully requests that this Court issue a preliminary injunction (i) barring NCHRA from proceeding with its Seattle, Phoenix, and Las Vegas Events, and any other events outside NCHRA's Northern California territory, (ii) requiring NCHRA to cease its unauthorized use of SHRM trademarks in connection with these events, and (iii) requiring NCHRA to cease its use of the "HR West" name in any activities outside of its Northern California territory.

Dated: June 22, 2016

Respectfully submitted:

*/s/    Michael Warley*
Michael Warley (VA Bar: 88075)
Jerald A. Jacobs (*Pro hac vice*)
Alvin Dunn (*Pro hac vice*)
Sara E. Stinson (*Pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN, LLP
1200 Seventeenth Street, NW
Washington, DC  20036-3006
Tel:  (202) 663-8000
Fax:  (202) 663-8007
michael.warley@pillsburylaw.com
jerry.jacobs@pillsburylaw.com
alvin.dunn@pillsburylaw.com
sara.stinson@pillsburylaw.com
*Attorneys for Society for Human Resource Management*

|  |  |
|---|---|
| Society for Human Resource Management, | |
| | Civil Action No. 1:16-cv-00596-AJT-TCB |
| *Plaintiff*, | |
| vs. | Judge Anthony Trenga |
| Northern California Human Resources Council, | |
| *Defendant*. | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2016, I filed the foregoing Memorandum of Law and

attached Supplemental Declaration of Henry G. Jackson and attached Declaration of Karen

Verrico electronically using the Court's CM/ECF system, which automatically sent a notice of

electronic filing to the following counsel:

Michael E. Barnsback
LᴇCʟᴀɪʀ Rʏᴀɴ
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Phone: (703) 647-5931
Fax: (703) 647-5993
Michael.Barnsback@leclairryan.com

DATED: June 22, 2016

/s/    Michael Warley
Michael Warley (VA Bar: 88075)
Pɪʟʟsʙᴜʀʏ Wɪɴᴛʜʀᴏᴘ Sʜᴀᴡ Pɪᴛᴛᴍᴀɴ, LLP
1200 Seventeenth Street, NW
Washington, DC  20036-3006
Tel:  (202) 663-8000
Fax:  (202) 663-8007
michael.warley@pillsburylaw.com
*Attorney for Society for Human Resource Management*